UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 11-69-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TINA MULLINS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Tina Mullins was sentenced on May 14, 2012, to a term of imprisonment of 70 months based upon her involvement in a conspiracy to distribute a large quantity of cocaine. [Record No. 203] Mullins was subject to a mandatory minimum term of incarceration of 60 months. Additionally, her sentencing range under the United States Sentencing Guidelines was 78 to 97 months of incarceration. However, based on a motion filed by the United States under U.S.S.G. § 5K1.1, the Court granted a reduction of Mullins sentence.

Mullins has now moved the Court to reduce her sentence under 18 U.S.C. § 3582(c)(2) based on the recent amendments to the drug tables of the United States Sentencing Guidelines used to determine non-binding guideline ranges for incarceration applicable to certain federal drug offenses. [Record No. 379] Having reviewed the file of this proceeding, including the defendant's Presentence Investigation Report ("PSR"), the

Court finds that an additional reduction of the defendant's sentence is not appropriate. Therefore, her motion will be denied.[1]

Mullins was charged with ten other co-defendants with a conspiracy to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846, among a number of other charges. All but the conspiracy to distribute charge were dismissed upon motion of the United States at sentencing. [Record No. 203] The factual basis supporting Mullins' guilty plea is found in paragraph 3 of her written plea agreement, which provides:

> (a) From 2003 and continuing through October 2011, the Defendant conspired with Vincent Nunley, James Holt, Daniel Maley, Jesse Johnson, Charles Slone, Shasta Hodges, Kevin Mullins, William Hensley, Carl Ridpath, Romaine Parm, and others to distribute cocaine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance, in the Eastern District of Kentucky. The Defendant's involvement in the conspiracy is more particularly described below.
>
> (b) James Holt was the leader of the organization and Vincent Nunley was his source of supply of cocaine; Maley and Johnson were mid-level distributors; the Defendant, Slone, Hodges, Kevin Mullins, and Hensley were street-level distributors; and Ridpath and Parm were sources of supply of marijuana. The organization operated primarily in Covington, Kentucky and out of the Someplace Else Bar, in particular.
>
> (c) From February 2011 and continuing through October 25, 2011, the Drug Enforcement Administration (DEA) and the Northern Kentucky Drug Strike Force (NKDSF) made several controlled purchases of cocaine from the individuals named above. The details of those purchases are as follows:
>   (1) On February 14, 2011, a confidential source (CS) purchased 11.7 grams of cocaine from the Defendant, which was supplied by Daniel Maley;
>   (2) On February 17, 2011, a CS purchased 12.6 grams of cocaine from the Defendant, which was supplied by Daniel Maley;
>   (3) On February 23, 2011, a CS purchased 3.37 grams of cocaine from the Defendant and Kevin Mullins, which was supplied by Daniel Maley;

---

1     The Court previously determined that appointment of counsel is not necessary for the reasons stated in its November 13, 2014 Order. [Record No. 378]

(4) On March 4, 2011, a CS purchased 25.3 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(5) On March 10, 2011, a CS purchased 51.4 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(6) On March 30, 2011, a CS purchased 105.7 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(7) On April 21, 2011, two CSs purchased 52.9 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(8) On April 26, 2011, a CS purchased 6.75 grams of cocaine from William Hensley;

(9) On May 5, 2011, two CSs purchased 52.0 grams of cocaine from the Defendant, which was supplied by Daniel Maley; of controlled substances.

(10) On May 25, 2011, a CS purchased 6.8 grams of cocaine from William Hensley, which was supplied by Daniel Maley;

(11) On May 31, 2011, two CSs purchased 52.2 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(12) On June 10, 2011, two CSs purchased 25.6 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(13) On July 11, 2011, two CSs purchased 26.0 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(14) On July 13, 2011, a CS purchased 6.75 grams of cocaine from William Hensley;

(15) On July 14, 2011, two CSs purchased 26.1 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(16) On July 26, 2011, two CSs purchased 107.6 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(17) On August 3, 2011, two CSs purchased 104 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(18) On August 26, 2011, two CSs purchased 51.6 grams of cocaine from the Defendant, which was supplied by Daniel Maley;

(19) On September 14, 2011, two CSs purchased 25.6 grams of cocaine from the Defendant, which was supplied by Daniel Maley; and

(20) On September 22, 2011, two CSs purchased 244 grams of cocaine from the Defendant, which was supplied by Daniel Maley.

(d) On July 28, 2011, Romaine Parm delivered a quantity of marijuana to Daniel Maley for distribution. He was arrested later that evening by officers with the Highland Heights-Southgate Police Department, after his ex-girlfriend reported a domestic disturbance at her residence in Campbell County. Officers encountered Parm and detected a strong odor of marijuana emanating from his car. Parm admitted to officers that he had 2 pounds of marijuana inside the vehicle, along with the firearm listed in Count 20, which he acknowledged possessing for his protection.

(e) On October 24, 2011, search warrants were executed on the following premises: Holt's, Maley's, and Slone's residences; Someplace Else Bar and a recreational vehicle (RV) parked outside; and AA Electric Motor Services, which Holt used as a processing facility and stash house. Agents recovered quantities of cocaine and marijuana from the RV, Maley's residence, and Slone's residence, which he shared with Hodges; as well as money and paraphernalia, including a kilogram press, from AA Electric Motor Services.

(f) That same day, Holt was interviewed and advised that he has been distributing cocaine for the past 8 years. He identified Vincent Nunley as his primary source of supply of cocaine. According to Holt, he had been receiving 20-40 ounces of cocaine from Nunley for distribution, on a monthly basis for the past 8 years.

(g) On October 25, 2011, DEA arranged a controlled delivery of 30 ounces of cocaine from Nunley. After Nunley arrived at the meeting place (and was positively identified), agents attempted to conduct a traffic stop of his vehicle. A vehicle pursuit, followed by a foot pursuit, ensued. During the pursuit, Nunley discarded several plastic baggies containing approximately 30 ounces of cocaine. He was eventually apprehended. A subsequent consent search of Nunley's home uncovered an additional kilogram of cocaine and approximately $26,000.

(h) The Defendant acknowledges obtaining approximately 4 kilograms of cocaine from Maley over the past 10 years for distribution.

[Record No. 201]

As discussed during the sentencing hearing, Mullins was a street-level distributer of cocaine. The information provided to the Court established that, for a significant period of time, Mullins was making significant sums of money through her distribution activities. (Mullins admitted to distributing approximately 4 kilograms of cocaine in Northern Kentucky over a ten year period.) While Mullins was not a leader or high-level supplier, her involvement in this conspiracy was significant.

The issue presented by the current motion is whether a sentence reduction would be warranted in light of the facts of the case and all relevant factors to be considered under 18

U.S.C. § 3553. In evaluating the present motion, this Court must seriously consider all relevant statutory factors and independently determine whether a reduced sentence would be "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." These factors include, but are not limited to, the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from future crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). Considering all relevant factors, the undersigned believes that such a reduction would be wholly inappropriate.

As acknowledged during the sentencing hearing, at the time of sentencing, the Court had the authority to reduce the defendant's sentence to 60 months. However, it was not appropriate to go below 70 months of incarceration. The Court specifically noted that any further reduction would unduly diminish the seriousness of the particular offense and would not promote respect for the law or provide a just punishment. The Court's reasoning at the time of the sentencing hearing remains true today.

A reduced sentence would not provide general or specific deterrence. Next, a reduced sentence would not provide proper punishment for Mullins's criminal activity. While a reduced sentence would reduce the cost associated with incarceration, that fact is not specifically enumerated in 18 U.S.C. § 3553 as a relevant sentencing factor, and it does not overcome the more appropriate goals of sentencing outlined above. In summary, the recent

modifications of the United States Sentencing Guidelines do not affect this Court's original determination that a 70 month sentence for Mullins's federal crime is completely appropriate. Accordingly, it is hereby

**ORDERED** that Defendant Tina Mullins' motion for a reduction of her sentence under 18 U.S.C. § 3582(c)(2) [Record No. 379] is **DENIED.**

This 14th day of November, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge